IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FAIRMONT SUPPLY CO. and CNX
GAS COMPANY, LLC,

        Plaintiffs,

   v.

CRESSMAN TUBULAR PRODUCTS
CORP., THYSSENKRUPP
MATERIALS, N.A., THYSSENKRUPP
MANNEX GmbH, and ISMT LTD,

        Defendants.

10cv1606
**ELECTRONICALLY FILED**

**MEMORANDUM ORDER**

This is a breach of contract and breach of warranty lawsuit. Defendants manufacture and/or supply steel pipe. Plaintiff, Fairmont Supply Co. ("Plaintiff Fairmont"), purchased pipe from Defendant, Cressman Tubular Products Corporation ("Defendant Cressman"), and then supplied it to Plaintiff, CNX Gas Company, LLC ("Plaintiff CNX").[1] After Plaintiff CNX (the end user of the steel pipe in question) incorporated the pipe into its gas well production pipeline, a hole in the pipe was discovered at a depth which rendered the well shaft completely inoperable. Plaintiffs are seeking compensatory damages.

Currently before the Court are two separate Motions to Dismiss, one filed by Defendant Cressman and the other by Defendant ThyssenKrupp Materials, N.A. ("Defendant ThyssenKrupp-Materials") pursuant to Fed.R.Civ.P. 12(b)(6). See doc. nos. 13 and 16, respectively. Plaintiffs filed a Brief in Opposition to each Motion. See doc. nos. 19 and 20,

---

[1] Plaintiff CNX is affiliated with Plaintiff Fairmont in that both entities have the same corporate parent, CONSOL Energy, Inc.

respectively. Each of the Defendants filed a Reply Brief in Support of their respective Motions to Dismiss. See doc nos. 23 and 24, respectively.

After careful consideration of all of the submissions, and based upon the analysis and reasoning that follows, Defendants' motions will be denied in part and granted in part.

**I. Background**

The following facts are accepted as true for solely for the purposes of this Motion to Dismiss.

Defendant Cressman, Defendant ThyssenKrupp-Materials, and Defendant ThyssenKrupp Mannex GmbH ("Defendant ThyssenKrupp-Mannex) repeatedly solicited Plaintiffs Fairmont and CNX to purchase to purchase steel tubing manufactured by Defendant ISMT, Ltd. ("Defendant ISMT"), for use in its Marcellus shale drilling operations. Doc. no. 6, ¶¶ 15, 34. Defendant ISMT (a company organized the laws of the Republic of India) hired Defendant ThyssenKrupp-Mannex to market ISMT's pipe to customers in the United States. Id. at ¶ 20. Defendant ThyssenKrupp-Mannex acted as Defendant ISMT's agent, and Defendant ThyssenKrupp-Materials acted as an agent or sub-agent of Defendant ThyssenKrupp-Mannex and Defendant ISMT, and Defendant Cressman acted as an agent or sub-agent of Defendant ThyssenKrupp-Mannex, Defendant ThyssenKrupp-Materials, and Defendant ISMT for selling steel tubing to customers in Pennsylvania. Id. at ¶ 29-31.

On June 26, 2009, representatives from Defendant Cressman (Art Cressman, Jr.), Defendant ThyssenKrupp-Materials (Christiane Stuart), and Defendant ThyssenKrupp-Mannex (Carsten Konig), attended a meeting at Plaintiff Fairmont's offices. Id. at ¶¶ 16-18, 21. Mr. Konig is the head of the Oil and Gas division of ThyssenKrupp-Mannex. Id. at ¶19. Mr. Stuart

works for ThyssenKrupp-Materials Steel Services Trading Division which acts as the importer and takes title to goods manufactured abroad. Id. at ¶ 22.

During that meeting, it was discussed how Defendant ISMT's steel tubes (hereinafter, "the subject tubes" or "the tubes at issue") could "meet the needs of Fairmont and its customers in Pennsylvania, including CNX . . . ." Id. at ¶ 24. The Amended Complaint also indicates that Defendant Cressman, in an email dated July 12, 2009 to Plaintiff Fairmont, stated that the tubes in question would provide "success to Fairmont, 'its Parent and to your other regional clients.'" Id. at ¶ 26(h). The Amended Complaint also alleges that the "Parent" referenced in this email referred to CONSOL Energy, Inc. "and its affiliates, including CNX . . . ." Id. at ¶ 27.

As result of the Defendants' collective marketing events, Plaintiff Fairmont agreed to purchase steel tubing manufactured by ISMT. Id. at ¶ 35. Some of the steel tubing was delivered to Plaintiff CNX for installation in well NV-17CCV. Id. at ¶ 45.

Installation of the steel tubes in well NV-17CCV was concluded on July 4, 2010. Id. at ¶ 46. On July 24, 2010, a pressure test of the well shaft revealed a hole in the steel tubing at issue nearly 5200 feet down the vertical well shaft. Id. at ¶ 47. Due to its depth this hole could not be reliably repaired and rendered the well shaft inoperable. Id. at ¶¶ 48-49. The segment of tubing at issue cannot be removed from the well shaft because the pipe is cement inside other casings which are cemented in the ground. Id. at ¶ 50.

Plaintiff Fairmont engaged a vendor who tested and verified that the tubing with the hole was, in fact, the pipe that Defendant Cressman sold to Plaintiff Fairmont and that Plaintiff Fairmont, in turn, sold to Plaintiff CNX. Id. at ¶ 52. After communicating the pipe failure and test results to Defendant Cressman, Defendant Cressman was sent, at its request, that all remaining steel tubing supplied be delivered to a vendor for testing. Id. at ¶ 55. In September of

2010, after testing 1,577 pieces, at least 277 did not comply with the thickness specifications and could not be repaired.  Id. at ¶ 57.

## II. Standard of Review

In considering a Rule 12(b)(6) motion, federal courts require notice pleading, as opposed to the heightened standard of fact pleading. Federal Rule of Civil Procedure 8(a)(2) requires only " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.' " Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

To survive a motion to dismiss, plaintiff must allege sufficient facts that, if accepted as true, state "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 at 570). A claim has facial plausibility when a plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant may be liable for the misconduct alleged. Id. at 1949.  However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.' " Iqbal, 129 S.Ct. at 1950 (quoting Twombly, 550 U.S. at 555).  In deciding a motion to dismiss, a court must determine whether the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." PA Prison Soc. v. Cortes, 622 F.3d 215, 233 (3d Cir. 2010), citing Iqbal, 129 S.Ct. at 1949.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009).

As explained succinctly by the United States Courts of Appeals for the Third Circuit:

> Pursuant to Ashcroft v. Iqbal, [citation omitted], district courts must conduct a two-part analysis when presented with a motion to dismiss.  Fowler v.

> UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009). "First, the factual and legal elements of a claim should be separated." Id. "The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11. "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' " Id. at 211 (quoting Iqbal, 129 S.Ct. at 1950).

Edwards v. A.H. Cornell and Son, Inc., 610 F.3d 217, 219 (3d Cir. 2010).

When determining whether a plaintiff has met the second part of the analysis and presented facts sufficient to show a "plausible claim for relief," the Court must consider the specific nature of the claim presented and the facts pled to substantiate that claim. For example, in Fowler, a case predicated upon a violation of the Rehabilitation Act, the Court of Appeals determined that "[t]he complaint pleads how, when, and where [the defendant] allegedly discriminated against Fowler." 578 F.3d at 212. The Court, while noting that the Complaint was "not as rich with detail as some might prefer," it the "how, when and where" provided by the plaintiff sufficient grounds to establish plausibility. Id. at 211-212.

The Court of Appeals for the Third Circuit in Guirguis v. Movers Specialty Services, Inc., 346 Fed.Appx. 774, 776 (3d Cir. 2009), a civil rights and Title VII case, affirmed a decision to dismiss a plaintiff's complaint because the plaintiff failed to plead facts explaining why he believed his national origin was the basis for the termination of his employment .

Therefore, when deciding a motion to dismiss under Rule 12(b)(6), we apply the following rules. The facts alleged in the complaint, but not the legal conclusions, must be taken as true and all reasonable inferences must be drawn in favor of plaintiff. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555. We may not dismiss a complaint merely because it appears unlikely or improbable that plaintiff can prove the facts alleged or will ultimately prevail on the merits. Id. at 556, 563 n.8. Instead, we must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Id. at 556. In short,

the motion to dismiss should not be granted if plaintiff alleges facts which could, if established at trial, entitle him to relief. Id. at 563 n.8. Generally speaking, a complaint that provides adequate facts to establish "how, when, where, and why" will survive a motion to dismiss. See Fowler and Guirguis, supra.

It is on this standard that the court has reviewed Defendants' Motions for Dismissal.

### III. Discussion

A. **Defendant Cressman's Motion**

    1. **Cressman's Motion to Dismiss all Breach of Contract Claims**

        a. **CNX's Claim for Breach of Contract**

Defendant Cressman contends that Plaintiff CNX has not adequately pled a legally cognizable breach of contract claim. Defendant Cressman notes that while paragraph 68 of the Amended Complaint concludes that Plaintiff CNX was a third-party beneficiary of the Fairmont-Cressman contract, it argues that the remainder of Plaintiff's Amended Complaint is devoid of any facts which support this legal conclusion.

Pennsylvania substantive law controls this matter. The Pennsylvania Supreme Court adopted the analysis of third party beneficiaries as set forth in the Restatement (Second) of Contracts § 302. See Guy v. Liederbach, 459 A.2d 774 (Pa. 1983) and Scarpitti v. Weborg, 609 A.2d 147 (Pa. 1992). The Supreme Court then held that person or entity is an intended third party beneficiary if either the agreement itself indicates that the purported beneficiary is a third party beneficiary, or if: (1) the recognition of the beneficiary's right is "appropriate to effectuate the intention of the parties," and (2) the performance satisfies "an obligation of the promisee to pay money to the beneficiary" or "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." Scarpitti, 609 A.2d at 150.

The United States Court of Appeals for the Third Circuit had a recent opportunity to interpret and apply Pennsylvania's third party beneficiary law in Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162 (3d Cir. 2008). In Sovereign Bank, the Court of Appeals specifically noted that § 302 of the Restatement (Second) of Contracts as adopted by the Pennsylvania Supreme Court "allows an 'intended beneficiary' to recover for breach of contract even though the actual parties to the contract did not express an intent to benefit the third party." Id. at 168.

Turning to the instant matter, Defendant Cressman does not advance a legal argument suggesting that Plaintiff CNX is not an intended third party beneficiary as that term is defined by Pennsylvania law. Instead, Defendant Cressman contends that Plaintiff CNX failed to plead any facts in support of its asserted legal conclusion that it is an intended third party beneficiary and thus has failed to allege a legally cognizable claim under Iqbal and its progeny. This Court disagrees.[2]

First, this Court notes that Plaintiffs' Amended Complaint does not allege that the Fairmont-Cressman contract specifically mentions or names CNX as a beneficiary. However, the Amended Complaint does indicate that a representative from Defendant Cressman attended a June 26, 2009 meeting at Plaintiff Fairmont's offices (doc. no. 6, ¶ 16) and during that meeting, it was discussed how the pipe at issue could "meet the needs of Fairmont and its customers in

---

[2] As noted by the United States Court of Appeals for the Third Circuit in Isbrandtsen Co. v. Local 1291 of International Longshoremen's Ass'n, 204 F.2d 495 (1953), due to the "considerable language in the Restatement and in the cases and decisions about 'intent' and 'accompanying circumstances,'" when considering a Rule 12 motion, as here, a district court should analyze whether the party claiming beneficiary status is incidental or intended. However, as noted above, Plaintiff's Amended Complaint alleges it is an intended beneficiary, not an incidental one. Doc. no. 6, ¶ 68. Therefore, Defendant Cressman's motion is silent as to whether Plaintiff CNX may have been an incidental beneficiary. At this juncture, this Court declines to find whether Plaintiff CNX was an intended or an incidental beneficiary. Rather, this Court will only analyze this matter based on the issue before it: whether Plaintiffs have sufficiently pled facts which, if proven, could support the legal conclusion found in paragraph 68, *i.e.,* that CNX was an intended beneficiary of the Fairmont-Cressman contract.

Pennsylvania, including CNX . . . ." Id. at ¶ 24. The Amended Complaint also indicates that Defendant Cressman, in an email dated July 12, 2009 to Plaintiff Fairmont, stated that the pipe in question would provide "success to Fairmont, 'its Parent and to your other regional clients.' " Id. at ¶ 26(h). The Amended Complaint also alleges that the "Parent" reference in this email referred to Consol Energy "and its affiliates, including CNX . . . ." Id. at ¶ 27.

Although all of the above-quoted facts are contained in the Amended Complaint beneath the heading "jurisdiction and venue," they are nonetheless, facts which, if proven, could support a legal conclusion that Plaintiff CNX was a third party beneficiary to the Fairmont-Cressman contract under the two-prong Scarpitti analysis. By alleging that Defendants knew that Fairmont was not the end user of the pipe in question (*i.e.*, that it was going to supply the pipe to other entities, specifically CNX), Plaintiff CNX has pled facts, if proven true, which could tend to establish that: (1) the recognition of CNX's beneficiary right is "appropriate to effectuate the intention of" Fairmont and Cressman, and (2) the circumstances indicate that Cressman intended to give CNX the benefit of the promised performance. Therefore, Plaintiff CNX has provided enough facts, if proven to be true, to illustrate its status as third party beneficiary and therefore assert a valid breach of contract claim.

Finding the Amended Complaint contains adequate factual allegations, Defendant Cressman's Motion to Dismiss the breach of contract claim brought by Plaintiff CNX shall be denied.

### b. Fairmont's Claim for Breach of Contract

Defendant Cressman contends that there is no breach of contract claim because the alleged breaches were not breaches of Plaintiff Fairmont's alleged contract. Specifically, Plaintiff Fairmont claims a breach of contract occurred when the goods received did not conform

to Fairmont's or the American Petroleum Institute's ("API's") standards and/or the goods were manufactured by an entity other than ISMT; however, Fairmont alleges that the contract at issue is a purchase order (attached to the Amended Complaint) and all of its incorporated terms and conditions. See doc. nos. 6, ¶ 62, 6-2, and 6-3. Defendant Cressman points out that the purchase order is silent as to any required "standards" or required manufacturer, and that the incorporated terms and conditions state, "[t]his order supersedes and cancels all prior communications between the parties . . . ." Doc. no. 6-3, ¶ 14.

The Uniform Commercial Code (hereinafter "the UCC" or "the Code") governs transactions of the type at issue here. See generally 13 Pa.C.S.A. § 2101 *et seq*. Generally, under the Code, a contract between merchants (like those present here) is subject to the statute of frauds and is considered to be the final expression of the parties. See 13 Pa.C.S.A. §§ 2201-2202. However, parol evidence may be considered as long as: (1) it does not conflict with any of the terms set forth in the writing; (2) it supplements or explains the course of performance, the course of dealing or usage or trade; (3) it provides consistent additional terms; and (4) the Court does not find the writing to have been the intended as a complete and exclusive statement of the terms of the agreement. 13 Pa.C.S.A. § 2202.

Plaintiffs, in their Amended Complaint, alleged that on June 26, 2009, Plaintiff Fairmont and Defendants Cressman, ThyssenKrupp-Materials, and ThyssenKrupp-Mannex, met and discussed steel tubes suitable for use in Marcellus shale well drilling. Doc. no. 6, ¶ 23. During the meeting, Defendant Cressman promoted ISMT's steel pipes as complying with standards published by the API and claimed these pipes would meet the needs of Plaintiff CNX. Id. at ¶¶ 23-24. On July 7, 2009, Plaintiff Fairmont delivered a quote to Plaintiff CNX Gas to supply steel pipe. Id. at ¶ 38.

On July 12, 2009, after the meeting with Defendants, and in response to a question posed by Plaintiff Fairmont, Defendant Cressman sent an email to Plaintiff Fairmont responding to questions regarding quality inspections. Id. at ¶ 25. This email stated, *inter alia*, that ISMT would provide a product that would conform to the latest API standards. Id. at ¶26b. On July 28, 2009, Plaintiff Fairmont submitted a purchase order to Defendant Cressman for steel pipe. Id. at ¶ 41.

Based in large part on these allegation, the Court finds that the Amended Complaint adequately pleads facts sufficient, if proven, which could show that the above mentioned parole evidence does not conflict with the terms of the Fairmont-Cressman contract and, if proven, may supplement or explains the course of performance, the course of dealing or usage or trade while providing consistent additional terms.

For these reasons, the Court will deny Cressman's Motion to Dismiss Fairmont's breach of contract claim, noting that it is premature at this stage of the legal proceedings to definitively rule whether such parole or extrinsic evidence will be considered by the Court, or whether the Court will determine, as a matter of law, whether the written expression of the parties constituted the complete and exclusive statement of the terms of their agreement.

## 2. Cressman's Motion to Dismiss CNX's Breach of Express Warranty

Pennsylvania law on the enforcement of an express warranty by a third party is set forth in Goodman v. PPG Industries, Inc., 849 A.2d 1239 (Pa.Super.Ct. 2004). In Goodman, the plaintiffs represented a class of residential customers who purchased custom-built wood-framed doors and windows from Marvin Lumber and Cedar Company ("Marvin"). Marvin treated the wood used in these doors and windows with a chemical manufactured by the defendant, PPG Industries ("PPG"), which was supposed to prevent wood rot. The plaintiffs sued PPG for

breach of express warranty for the alleged structural damage to their homes incurred when the chemical failed to protect their doors and windows from wood rot.

PPG promised Marvin that the chemical would protect the wood for at least 26 years. Marvin relied on this representation, and began using the chemical in its windows. Marvin marketed its windows and doors to its residential customers. Relying on PPG's express warranty to Marvin, Marvin represented to its customers that the doors and windows were treated to "permanently protect against rot and decay." Marvin's customers began to experience wood rot that was both premature and abnormally rapid.

The plaintiffs' complaint alleged that PPG knew that the plaintiffs would use, consume, or be affected by PPG's defective chemical used in Marvin windows and doors, and would be injured as a result of PPG's failure to honor its warranty of future performance. The plaintiffs did not allege that PPG ever made an express warranty to them, nor did they allege that either PPG or Marvin transmitted any of the explicit terms of PPG's express warranty that the chemical would protect against wood rot for 26 years.

Upon affirming the dismissal of this case upon preliminary objections, the Superior Court of Pennsylvania held:

> [T]hird parties may enforce express warranties only under circumstances where an objective fact-finder could reasonably conclude that: (1) the party issuing the warranty intends to extend the specific terms of the warranty to the third party (either directly or through an intermediary); and (2) the third party is aware of the specific terms of the warranty, and the identity of the party issuing the warranty.

Id. at 1246.

Thus, in order to survive Defendant Cressman's Motion to Dismiss, Plaintiff CNX must allege facts that satisfy both prongs of the Goodman test. Based upon the argument facts alleged

here, Plaintiffs have not adequately asserted an express warranty existed between Defendant Cressman and Plaintiff CNX.

Plaintiff's Amended Complaint may meet the first prong of the Goodman test – i.e. whether Defendant Cressman intended to extend the specific terms of the warranty to CNX either directly or through an intermediary. However, it clearly falls short of meeting the second prong – CNX's awareness of the specific terms of the warranty, and the identity of the party issuing the warranty. The Amended Complaint is utterly devoid of any allegations in this respect, and thus, for this reason, Defendant Cressman's Motion will be granted in this respect, but without prejudice to allow Plaintiffs the opportunity to amend their pleading should they choose to do so.

### 3. Cressman's Motion to Dismiss Plaintiffs' Breach of Implied Warranty

Under the Code, a breach of implied warranty arises only when the seller at the time contracting has reason to know, "(1) any particular purpose for which the goods are required; and (2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods[.]" 13 Pa.C.S.A. § 2315. The implied warranty applies to all contracts unless it is excluded or modified pursuant to Section 2316.

Pennsylvania law does not require privity to exist between seller and purchaser in order for the implied warranty to attach. See, French v. Commonwealth Associates, Inc., 980 A.2d 623, 633 (Pa.Super. 2009) (In cases involving a breach of the implied warranty of merchantability, any party injured by the defective product may sue any party in the distributive chain.). Pennsylvania law also holds that "[T]o be merchantable, the goods must be fit for their 'ordinary purposes.' The word 'ordinary' is readily understood to mean 'common' or 'average.'" Phillips v. Cricket Lighters, 883 A.2d 439, 444 (Pa. 2005).

Plaintiff's Amended Complaint indicates that Defendant Cressman repeatedly solicited Fairmont and CNX to purchase steel pipes manufactured by ISMT "for use in Marcellus Shale drilling." Doc no. 6, ¶ 15. Thus, it is clear that Plaintiffs have adequately pled that Defendant Cressman knew the particular purpose for which the pipe was required, and thereby meets the first prong of Section 2315. The numerous paragraphs reiterated in sections *infra*, illustrate that Plaintiffs met with and discussed who would manufacture the pipe and received assurances that the pipe would conform to API standards. The Amended Complaint also concludes that Plaintiffs "rel[ied] on the skill or judgment of Defendants to furnish suitable goods." Doc. no. 6, ¶ 78. However, nowhere in the Amended Complaint do Plaintiffs provide any facts upon which this legal conclusion is based.

It is for this reason that Defendant Cressman's Motion to Dismiss the Plaintiffs' implied warranty claim will be granted but without prejudice to allow Plaintiffs the opportunity to amend their pleading should they choose to do so.

## B. Defendant ThyssenKrupp-Materials' Motion

### 1. ThyssenKrupp-Materials' Motion to Dismiss all Breach of Express Warranty Claims

Defendant ThyssenKrupp-Materials claims that Plaintiffs failed to allege that a contract existed between (or among) them. As such, Defendant ThyssenKrupp-Materials cannot be held liable for a breach of express warranty.

As noted by Plaintiffs, under Pennsylvania law, a contract made by an agent, acting within the scope if his delegated authority, may be considered a contract with the principal. See, O'Donnell v. Union Paving Co., 182 A. 709, 710 (Pa.Super. 1936) (If the principal holds out the agent to the world, as a general agent in the transaction of his business, any contract made by him, within the scope of that business, will bind the principal . . .). Plaintiffs contend that their Amended Complaint adequately pled facts, which, if proven, would tend to prove that Defendant ThyssenKrupp-Materials: (1) was bound by its agent, Cressman; (2) through Cressman formed a contract with one and/or both Plaintiffs; and then (3) breached the express warranties contained in the contract.

After careful review of the Amended Complaint, this Court finds that Plaintiff pled that Defendant Cressman acted as Defendant ThyssenKrupp-Materials' agent (or sub-agent) at "all material times." Doc. no. 6 ¶ 31. However, there are no specific facts set forth in Plaintiffs' Amended Complaint which, if proven, would support this legal conclusion. Although Plaintiffs pled facts loosely discussing ThyssenKrupp-Materials attendance at the June 26, 2009 meeting, there are no facts which discuss the interrelationships among Defendants (specifically Cressman ThyssenKrupp-Materials) before or during that meeting. While discovery would undoubtedly further Plaintiffs' understanding of the nature of those relationships, if Plaintiffs wish to pursue breach of warranty claims against Defendant ThyssenKrupp-Materials, some factual explanation

of the interrelationship between Defendants ThyssenKrupp-Materials and Cressman is warranted.

Therefore, Defendant ThyssenKrupp-Materials' Motion to Dismiss Plaintiffs' breach of express warranty claims will be granted but without prejudice to allow Plaintiffs the opportunity to amend their pleading should they choose to do so.

### 2. ThyssenKrupp-Materials' Motion to Dismiss all Breach of Implied Warranty Claims

As noted above, in Section III. A. 3., under the Code, a breach of implied warranty arises only when the seller at the time contracting has reason to know, "(1) any particular purpose for which the goods are required; and (2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods[.]" 13 Pa.C.S.A. § 2315. The implied warranty applies to all contracts unless it is excluded or modified pursuant to Section 2316.

Pennsylvania law does not require privity to exist between seller and purchaser in order for the implied warranty to attach. Although Defendant ThyssenKrupp-Materials concedes that it had a contract to supply the pipe which ultimately reached Plaintiffs, nowhere in the Amended Complaint do Plaintiffs provide any facts upon which they base their conclusion that they "rel[ied] on the skill or judgment of Defendants to furnish suitable goods." Doc. no. 6, ¶ 78. It is for this reason alone that this Court will grant Defendant ThyssenKrupp-Materials' Motion to Dismiss the Plaintiffs' implied warranty claims. However, consistent will all other portions of this Opinion, this dismissal is granted without prejudice to allow Plaintiffs the opportunity to amend their pleading should they chose to do so.

## IV. Conclusion

Defendants' respective Motions to Dismiss will be denied in part and granted in part as follows: (1) Defendant Cressman's Motion to Dismiss Plaintiffs' Claims for Breach of Contract will be denied; (2) Defendant Cressman's Motion to Dismiss Plaintiffs' Claims for Breach of Express and Implied Warranties will be granted, but without prejudice to allow Plaintiffs the opportunity to amend their pleading; and (3) Defendant ThyssenKrupp-Materials' Motion to Dismiss all Breach of Express and Implied Warranty Claims will be granted, but without prejudice to allow Plaintiffs the opportunity to amend their pleading.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc: All Registered ECF Counsel and Parties