IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FAIRMONT SUPPLY CO. and CNX
GAS COMPANY, LLC,

          Plaintiffs,

    v.

CRESSMAN TUBULAR PRODUCTS
CORP., THYSSENKRUPP
MATERIALS, N.A., THYSSENKRUPP
MANNEX GmbH, and ISMT LTD,

          Defendants.

10cv1606
**ELECTRONICALLY FILED**

## MEMORANDUM OPINION

Before the Court is a Motion to Dismiss Plaintiffs' Second Amended Complaint filed on behalf of Defendant, ThyssenKrupp Materials, N.A. ("ThyssenKrupp-Materials"). Doc. no. 37. Plaintiffs filed a Brief in Opposition to the Motion (doc. no. 44), and after seeking leave of Court, Defendant ThyssenKrupp-Materials filed an eight-page Reply Brief. Doc. no. 52. For the reasons set forth in greater detail below, Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint shall be denied.

### I. Background

This Court writes primarily for the parties who are familiar with the facts of this case and thus, will not restate any factual allegations that are not germane to the resolution of this most recent Motion to Dismiss filed by Defendant ThyssenKrupp-Materials. See the Court's prior Memorandum Opinion of March 10, 2011, filed at doc. no. 26.

The following facts are accepted as true for solely for the purposes of this Motion to Dismiss.

Christiane Stuart, General Manager of ThyssenKrupp-Materials' Houston office, and Carsten Konig, head of the Oil and Gas division of ThyssenKrupp Mannex GmbH, attended a meeting held on June 26, 2009, at Plaintiff-Fairmont's office in Canonsburg, Pennsylvania, on behalf of Defendant. Doc. no. 32 at ¶¶ 16, 18-19, 21. During the meeting, Konig said that ISMT's new steel mill in India was producing steel pipes that were "suitable for use in Marcellus shale gas drilling . . . and that complied with standards published by the American Petroleum Institute . . . ("API")." Id. at ¶ 23.

Stuart and Konig represented that Defendant Cressman Tubular Products Corporation ("Cressman") was ThyssenKrupp-Materials' and ThyssenKrupp-Mannex's sole point of contact in the United States for purchasing ISMT steel. Id. at 25. Stuart and Konig also advised Plaintiff-Fairmont that ISMT's 5½ inch P110 steel pipe, purchased through Defendant-Cressman, would include an express warranty from Defendants that the pipe complied with API specifications. Id. at ¶ 26. Stuart and Konig never indicated that Cressman would warrant the goods as API compliant, or that Fairmont could not look to the Co-Defendants to make warranty claims. Id. at ¶ 27. To the contrary, Stuart and Konig merely represented that all orders needed to go through Cressman, and that Cressman had the authority to warrant the pipe Stuart was marketing. Id. at ¶28.

It was apparent to Plaintiff Fairmont that Cressman was acting as agent or sub-agent, or in the alternative, apparent agent and/or sub-agent, for Defendants for the purposes of warranting ISMT-manufactured pipe as API compliant. Id. at ¶ 29.

## II. Standard of Review

In considering a Rule 12(b)(6) motion, federal courts require notice pleading, as opposed to the heightened standard of fact pleading. Federal Rule of Civil Procedure 8(a)(2) requires only

" 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.' " Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

To survive a motion to dismiss, plaintiff must allege sufficient facts that, if accepted as true, state "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 at 570). A claim has facial plausibility when a plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant may be liable for the misconduct alleged. Id. at 1949. However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.' " Iqbal, 129 S.Ct. at 1950 (quoting Twombly, 550 U.S. at 555). In deciding a motion to dismiss, a court must determine whether the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." PA Prison Soc. v. Cortes, 622 F.3d 215, 233 (3d Cir. 2010), citing Iqbal, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009).

As explained succinctly by the United States Courts of Appeals for the Third Circuit:

> Pursuant to Ashcroft v. Iqbal, [citation omitted], district courts must conduct a two-part analysis when presented with a motion to dismiss. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009). "First, the factual and legal elements of a claim should be separated." Id. "The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11. "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' " Id. at 211 (quoting Iqbal, 129 S.Ct. at 1950).

Edwards v. A.H. Cornell and Son, Inc., 610 F.3d 217, 219 (3d Cir. 2010).

3

When determining whether a plaintiff has met the second part of the analysis and presented facts sufficient to show a "plausible claim for relief," the Court must consider the specific nature of the claim presented and the facts pled to substantiate that claim. For example, in Fowler, a case predicated upon a violation of the Rehabilitation Act, the Court of Appeals determined that "[t]he complaint pleads how, when, and where [the defendant] allegedly discriminated against Fowler." 578 F.3d at 212. The Court, while noting that the Complaint was "not as rich with detail as some might prefer," it the "how, when and where" provided by the plaintiff sufficient grounds to establish plausibility. Id. at 211-212.

The Court of Appeals for the Third Circuit in Guirguis v. Movers Specialty Services, Inc., 346 Fed.Appx. 774, 776 (3d Cir. 2009), a civil rights and Title VII case, affirmed a decision to dismiss a plaintiff's complaint because the plaintiff failed to plead facts explaining why he believed his national origin was the basis for the termination of his employment .

Therefore, when deciding a motion to dismiss under Rule 12(b)(6), we apply the following rules. The facts alleged in the complaint, but not the legal conclusions, must be taken as true and all reasonable inferences must be drawn in favor of plaintiff. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555. We may not dismiss a complaint merely because it appears unlikely or improbable that plaintiff can prove the facts alleged or will ultimately prevail on the merits. Id. at 556, 563 n.8. Instead, we must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Id. at 556. In short, the motion to dismiss should not be granted if plaintiff alleges facts which could, if established at trial, entitle him to relief. Id. at 563 n.8. Generally speaking, a complaint that provides adequate facts to establish "how, when, where, and why" will survive a motion to dismiss. See Fowler and Guirguis, supra.

It is on this standard that the Court has reviewed Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint.

### III. Discussion

### A. ThyssenKrupp Materials' Motion to Dismiss Breach of Express Warranty Claims

Previously, this Court granted Defendant ThyssenKrupp-Materials' Motion to Dismiss Plaintiffs' breach of express warranty claims without prejudice. See doc. nos. 26 and 27.

**1. Express Warranty Claims asserted by Plaintiff Fairmont**

As noted by the Court in its prior Memorandum Opinion in this matter:

> [U]nder Pennsylvania law, a contract made by an agent, acting within the scope if his delegated authority, may be considered a contract with the principal. See, O'Donnell v. Union Paving Co., 182 A. 709, 710 (Pa.Super. 1936) (If the principal holds out the agent to the world, as a general agent in the transaction of his business, any contract made by him, within the scope of that business, will bind the principal . . .).

See doc. no. 26, at p. 14.

The three basic elements of agency are: (1) the manifestation by the principal that the agent shall act for him, (2) the agent's acceptance of the undertaking, and (3) the understanding of the parties that the principal is to be in control of the undertaking. See CGB Occupational Therapy, Inc. v. RHA Health Services Inc., 357 F.3d 375, 385 (3d Cir. 2004). See also McCarthy v. Recordex Service, Inc., 80 F.3d 842, 857 (3d. Cir. 1996) ("In Pennsylvania, the elements of agency are 'the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking.'" (quoting *Scott v. Purcell,* 490 Pa. 109, 415 A.2d 56, 60 (1980) (quoting *Restatement (Second) of Agency* § 1, Comment b (1958))).

In its prior Opinion, this Court noted that Plaintiffs' Amended Complaint lacked specific facts which, if proven, could support the following legal conclusion: "Defendant-Cressman acted as Defendant-ThyssenKrupp Materials' agent or sub-agent at all material times."

5

Doc. no. 26, p. 14. This Court granted Defendant's Motion to Dismiss this claim but also granted Plaintiffs leave to amend their pleading again, if they chose to do so, to provide facts upon which this conclusion could be based. See doc. no. 27.

Plaintiffs filed a Second Amended Complaint, which, upon this Court's review, appears to be more robust with respect to the factual allegations pertaining Plaintiffs' breach of express warranty claims. Nevertheless, Defendant ThyssenKrupp-Materials' current Motion to Dismiss argues that the Second Amended Complaint remains deficient in that it fails to allege facts which could support a claim for breach of express warranty. This Court disagrees.

As noted above in sub-part "I." of this Opinion, Plaintiffs' Second Amended Complaint alleges very specific facts, which if proven true, could support the legal conclusion that Defendant Cressman acted as the agent of Defendant ThyssenKrupp-Materials. Specifically, during the June 26, 2009 meeting, Defendant ThyssenKrupp-Materials, through its General Manager, Christiane Stuart, represented that Cressman was ThyssenKrupp-Materials' sole point of contact in the United States for purchasing ISMT steel. Doc. no. 32 at ¶ 25. Stuart represented that all orders needed to go through Cressman, and that Cressman had the authority to warrant the pipe Stuart was marketing. Id. at ¶28. Stuart advised Plaintiffs that ISMT's steel pipe, purchased through Cressman, would include an express warranty from Defendants that the pipe complied with API specifications. Id. at ¶ 26. The pipe failed to meet API standards. Id. at ¶ 111.

Based upon these facts, which are assumed to be true solely for purposes of deciding this Motion to Dismiss, this Court finds that Plaintiffs have adequately pled that during the June 26, 2009 meeting in Fairmont's offices: (1) there was a manifestation by ThyssenKrupp-Materials that Cressman would act for it, (2) Cressman accepted that undertaking, and (3) there was an

understanding among all the parties present at that meeting that ThyssenKrupp-Materials and ThyssenKrupp-Mannex were in control of the undertaking.[1]  These allegations which, if proven true, establish a basis which could support a conclusion that: (1) Cressman acted as ThyssenKrupp-Materials' and Thyssen-Krupp-Mannex's agent, and (2) that during the June 26, 2009 meeting (and subsequently, as other facts set forth in the Second Amended Complaint (not reiterated here) suggest), an express warranty was created with respect to the steel pipe in question.  Accordingly, this Court will not dismiss Plaintiff Fairmont's claim for breach of express warranty.

### 2. Express Warranty Claims asserted by Plaintiff CNX

Plaintiff CNX was not in attendance at the June 26, 2009 meeting where these revelations and assertions were made by Defendant ThyssenKrupp-Materials.  As noted by this Court in its prior Opinion, CNX is one step further removed from the express warranty.  See doc. no. 26, generally.

Plaintiffs have asserted in their Brief in Opposition to the Motion to Dismiss that Plaintiff CNX was a third-party beneficiary to any express warranty extended to Plaintiff Fairmont by Defendants.  As noted by this Court in its prior Opinion, under Goodman v. PPG Industries, Inc., 849 A.2d 1239, 1246 (Pa.Super.Ct. 2004), Pennsylvania law allows for the enforcement of an express warranty by a third party under circumstances where an objective fact-finder could reasonably conclude that: (1) the party issuing the warranty intends to extend the specific terms of the warranty to the third party (either directly or through an intermediary); and (2) the third party is aware of the specific terms of the warranty, and the identity of the party issuing the warranty.  Thus,

---

[1] The same paragraphs in the Second Amended Complaint (¶¶ 23-28) allege that Konig made the same representations with respect Cressman's ability to act on behalf of DefendantThyssenKrupp-Mannex.

in order to survive ThyssenKrupp-Materials' Motion to Dismiss the Second Amended Complaint, Plaintiff CNX must allege facts that satisfy both prongs of the Goodman test.

The Second Amended Complaint makes it clear that Plaintiff CNX was not in attendance at the meeting held in Fairmont's offices on June 26, 2009. However, the Second Amended Complaint does contain allegations which indicate that: (1) Fairmont made an oral presentation to CNX where it "repeated the virtues of ISMT-manufactured API-compliant steel pipe that [ThyssenKrupp]-Mannex, [ThyssenKrupp]-Materials, and Cressman were offering to sell[,]" (2) that orders would be placed through Defendant Cressman, and (3) "that all [D]efendants would supply written certifications when delivering the pipe expressly warranting the pipe complied with API specifications." Doc. no. 32, ¶¶ 46-48. In addition, the Second Amended Complaint indicates that a meeting occurred on November 17, 2009, among representatives from CNX, Fairmont, and Defendant Cressman (ThyssenKrupp-Materials' and ThyssenKrupp-Mannex's alleged agent – assuming all prior facts, as reiterated above, are true). Id. at ¶¶ 67-71. At this meeting, CNX was told that it would receive ISMT manufactured pipes that were API compliant. Id. at ¶ 71. The Second Amended Complaint also avers that the ISMT pipes met with API specifications and the pipes that were actually delivered to Plaintiffs with certificates indicating that the pipes met API specifications, and the pipes themselves were "stenciled" with API certification. Id. at ¶ 110.

Based on these revised allegations it appears to this Court as though the Plaintiff has adequately pled facts which, if proven, could meet both prongs of the Goodman test. Namely, that Defendants ThyssenKrupp-Materials and ThyssenKrupp-Mannex, through Cressman, intended to extend the specific terms of the warranty to Plaintiff CNX (the third party), and Plaintiff CNX was well aware of the specific terms of the warranty, as well as the identity of the parties actually issuing the warranty.

Accordingly, Defendant's Motion to Dismiss the breach of express warranty claim found in Plaintiffs' Second Amended Complaint shall be denied.

**B. Motion to Dismiss Breach of Implied Warranty Claims**

As noted by this Court in its prior Opinion:

> Under the Code, a breach of implied warranty arises only when the seller at the time contracting has reason to know, "(1) any particular purpose for which the goods are required; and (2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods[.]" 13 Pa.C.S.A. § 2315. The implied warranty applies to all contracts unless it is excluded or modified pursuant to Section 2316.
>
> Pennsylvania law does not require privity to exist between seller and purchaser in order for the implied warranty to attach. See, French v. Commonwealth Associates, Inc., 980 A.2d 623, 633 (Pa.Super. 2009) (In cases involving a breach of the implied warranty of merchantability, any party injured by the defective product may sue any party in the distributive chain.). Pennsylvania law also holds that "[T]o be merchantable, the goods must be fit for their 'ordinary purposes.' The word 'ordinary' is readily understood to mean 'common' or 'average.'" Phillips v. Cricket Lighters, 883 A.2d 439, 444 (Pa. 2005).

Doc. no. 26, p. 12.

Defendant ThyssenKrupp-Materials moved to dismiss the prior Complaint, and this Court granted that motion without prejudice because the prior Complaint lacked facts which could support a conclusion that Plaintiffs relied on ThyssenKrupp-Materials' skill or judgment to furnish suitable goods. Plaintiffs' Second Amended Complaint now contains ample facts which meet both prongs of 13 Pa.C.S.A. § 2315.

For example, Plaintiffs' Second Amended Complaint alleges that Carsten Konig, head of the Oil and Gas Division of Defendant ThyssenKrupp-Mannex, was also present at the previously discussed June 26, 2009 meeting. Doc. no. 32, ¶¶ 16, 18-19. During the meeting, Konig "touted the virtues of ISMT's new steel mill in Mumbai, India, which was producing 5½ inch diameter steels tubes he said were suitable for use in Marcellus shale gas drilling operations

that complied with standards published by the [API]." Id. at ¶ 23. "Konig and Stuart represented that Cressman was [ThyssenKrupp-Materials' and ThyssenKrupp-Mannex's] sole point of contact in the United States for purchasing ISMT steel pipe." Id. at ¶ 25. Konig and Stuart represented that Defendant "Cressman had the authority to warrant the pipe Konig and Stuart were marketing." Id. at ¶ 28. When Plaintiff Fairmont had questions about the quality of the pipe, it wrote to Cressman and received written assurances in the form of an email from Cressman that ISMT was an API licensee, that its product would meet the required specifications and quality requirements, and would provide success to Fairmont, "its Parent and to your other regional clients." Id. at 43. Shortly after receiving this email, Fairmont made a presentation to CNX regarding the ISMT, API-compliant, steel pipes at issue in this case. Id. at ¶¶ 46-48. The Second Amended Complaint alleges that CNX did not agree to purchase pipe from any source other than ISMT, and that CNX would not have used Fairmont as its pipe supplier if Fairmont had not represented that the Co-Defendants warranted the ISMT pipe would be compliant with API standards. Id. at ¶¶ 49-50.

Based on these allegations, and others not reiterated here, Plaintiffs have clearly alleged sufficient facts which, if proven, meet the two requirements of 13 Pa.C.S.A. § 2315 regarding the formation of an implied warranty made with respect to the steel pipe in question. Similarly, Plaintiffs have now also pled sufficient facts which could support the legal conclusion that Defendants ThyssenKrupp-Materials and ThyssenKrupp-Mannex then breached those implied warranties. Thus, this Court will deny Defendant ThyssenKrupp-Materials' Motion to Dismiss Plaintiffs' implied warranty claims as set forth in their Second Amended Complaint.

## IV. Conclusion

Based on the foregoing law and authority, this Court shall deny Defendant ThyssenKrupp-Materials' Motion to Dismiss Plaintiffs' Second Amended Complaint in its entirety. An appropriate Order follows.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties